**Patricka JOYNER, Plaintiff**

v.

**SCHOOL DISTRICT OF PHILADELPHIA et al., Defendants,**

**No. CIV.A. 03–3246.**

United States District Court, E.D. Pennsylvania.

April 13, 2004.

Athena M. Dooley, Philadelphia, PA, for Plaintiff.

Michael J. Feinberg, Philadelphia, PA, for Defendants.

### MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

This case comes before the Court on Defendants' Motion to Dismiss. For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint and accepted as true for the Court's consideration of Defendants' Motion. Plaintiff was a long-term substitute teacher at Kensington High School ("Kensington"), which is a component of Defendant School District of Philadelphia, Pennsylvania ("School District"). Additional defendants are the School Reform Commission ("Commission"), a division of the School District; Thomas Hanna, Principal of Kensington; and Joselyn Santiago, a teacher at Kensington.

Prior to April 2, 2002, Plaintiff reported SW, a student at Kensington, to school authorities for numerous incidents of behavioral problems and for assaulting another student. Plaintiff alleges that she knew that other members of the Kensington faculty and staff had reported SW as well. Plaintiff alleges that these complaints should have led to SW's suspension and/or other discipline by Kensington and Principal Hanna.

On April 2, 2002, Plaintiff was conducting a class attended by SW. During this class, SW told Plaintiff that she "was not doing s___t," and that "she did not 'have to come to your class,'" and also called Plaintiff a "crazy b_____."[1] At the conclusion of this class, SW confronted Plaintiff and said, "I am going to kill you b_____," while other students remained in the room.[2] SW then grabbed Plaintiff's shirt and hair, scratched her, and induced bleeding from her ear and hands. Plaintiff responded by shoving SW and then pulling SW's body toward her and restraining SW's hands until security arrived. Ms. Santiago witnessed the encounter.

Following the incident, the School District, the Commission and Principal Hanna detained Plaintiff until the end of the school day, at which time they released her. They instructed her to report to the cluster office at Kensington on April 3, 2002, informed her that she had the right to union representation, and instructed her not to speak with any staff or students.

1. Am. Compl. at 3.

2. *Id.*

Defendants did not report the incident with SW to the police.

Defendants conducted two hearings related to the incident. At these hearings, Ms. Santiago accused Plaintiff of assaulting SW. Plaintiff alleges that because she had been prohibited from speaking with staff or students, she was unable to present testimony on her own behalf at the hearings. In addition, Defendants did not turn over evidence of Plaintiff's injuries and SW's lack of injuries until after the hearings. Following the hearings, Defendants terminated Plaintiff for "violation of the School Laws of this Commonwealth, intemperance, incompetency, wilful neglect of duties, and other improper conduct...." [3]

## II. PROCEDURAL HISTORY

Plaintiff filed this action in the Court of Common Pleas for Philadelphia County on April 30, 2003. Although Plaintiff did not explicitly specify any federal causes of action in the Complaint, Defendants removed this case on May 22, 2003. In their Notice of Removal, Defendants claimed that the Complaint's repeated allegations of a "hostile work environment" and "harassment" implicated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and allegations of "failure to train" and "deliberate indifference" implicated 42 U.S.C. § 1983. As a result, asserted Defendants, federal jurisdiction existed under 28 U.S.C. § 1331.

After a conference with counsel, at which the Court inquired as to whether Plaintiff had intended to assert federal claims, the Court granted Plaintiff leave to amend her Complaint to more clearly articulate her claims. On December 17, 2003, Plaintiff filed her Amended Complaint, asserting thirteen causes of action: (1) violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); (2) violation of the Sarbanes–Oxley Act, 18 U.S.C. § 1514; (3) 42 U.S.C. § 1983; (4) wrongful discharge; (5) defamation; (6) malicious prosecution; (7) interference with contractual relations; (8) breach of implied covenant of good faith and fair dealing; (9) negligent hiring, training and retention of unfit supervisor; (10) breach of contract; (11) intentional infliction of emotional distress; (12) negligent infliction of emotional distress; and (13) false imprisonment. On January 15, 2004 Defendants filed the instant Motion to Dismiss the Amended Complaint for failure to state a claim.

## III. STANDARD OF REVIEW

When evaluating a motion to dismiss for failure to state a claim, the Court must "accept all well pleaded factual allegations as true and draw all reasonable inferences from such allegations in favor of the complainant." [4] The court should not grant a motion to dismiss "unless it is certain that no relief could be granted under any set of facts which could be proved." [5]

## IV. DISCUSSION [6]

### A. Title VII

■ Defendants seek dismissal of Plaintiff's Title VII claim for failure to exhaust administrative remedies because Plaintiff

---

3. *Id.* at 4.

4. *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 653 (3d Cir.2003).

5. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

6. In her Opposition Memorandum, Plaintiff agreed to withdraw her Sarbanes–Oxley

claim. Further, in response to Defendants' argument that Plaintiff's wrongful discharge, interference with contractual relations, breach of implied covenant of good faith and fair dealing, and breach of contract claims are governed exclusively by a collective bargaining agreement and should be adjudicated by a labor arbitrator, Plaintiff stated: "Plain-

has failed to allege that she filed discrimination charges with the Equal Employment Opportunity Commission ("EEOC") or Pennsylvania Human Relations Commission ("PHRC"). The Court agrees that this error is fatal to Plaintiff's Title VII claim. "It is well settled that as a pre-condition to filing suit under Title VII, a plaintiff must first file charges with the EEOC within 180 days of the alleged discriminatory act." [7] The Amended Complaint contains no allegation that Plaintiff satisfied this pre-condition. Although Plaintiff claims in her Response that she "attempted to file a complaint with the [PHRC], but her complaint was declined," [8] such an "attempt" does not satisfy the mandatory precondition set forth in Title VII. Accordingly, Defendants' Motion to Dismiss this claim is granted.

### B. 42 U.S.C. § 1983 [9]

■ "To recover under § 1983 ... Plaintiff must prove two separate and independent elements: first, that Defendants subjected her to the deprivation of a right 'secured by the Constitution and laws'; and, second, that while doing so, Defendants acted under color of Pennsylvania law." [10] In her § 1983 claim, Plaintiff makes a litany of allegations about Defendants' conduct, several of which could be construed as allegations of a violation of rights secured by the Constitution. As such, these allegations can serve as the basis for a § 1983 claim.

■ Defendants contend that Plaintiff's § 1983 claim cannot stand because "the § 1983 claim is factually predicated upon the very same facts (race and retaliation) setting forth an alleged violation under Title VII." [11] Defendants rely on what is referred to as the "Sea Clammers" rule:

> When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983....

tiff was under the impression when she filed her complaint that the Defendants and/or the PFT had curtailed her rights to arbitration or the grievance procedure. That process has been reinstated." The Court understands this to mean that Plaintiff is withdrawing these claims as well. Accordingly, the Court shall dismiss Plaintiff's Sarbanes–Oxley, wrongful discharge, interference with contractual relations, breach of implied covenant of good faith and fair dealing, and breach of contract claims in accordance with Federal Rule of Civil Procedure 41(a)(2).

7. *Wright v. Philadelphia Gas Works*, No. Civ. A.01–2655, 2001 WL 1169108, at *2, 2001 U.S. Dist. LEXIS 15852, at *7 (E.D.Pa. Oct. 2, 2001) (dismissing claims of hostile work environment and retaliation that had not been brought before the EEOC); *see also* 42 U.S.C. § 2000e–5(e); *Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir.1997) ("the causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits. A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII:

prior submission of the claim to the EEOC for conciliation or resolution.") (quoting *Hornsby v. United States Postal Serv.*, 787 F.2d 87, 90 (3d Cir.1986)).

8. Resp. at 1.

9. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

10. *Metzgar v. Lehigh Valley Hous. Auth.*, No. Civ.A.98–3304, 1999 WL 562756, at *2, 1998 U.S. Dist LEXIS 11908, at *6 (E.D.Pa. July 27, 1998).

11. Mot. to Dismiss at 4.

[W]hen a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.[12] Defendants argue that race and retaliation are exclusively governed by Title VII, and that, as such, they cannot serve as the predicate for a § 1983 claim. Defendants are partially correct: when the underlying offense for a § 1983 action is a violation of a right created by Title VII, the Sea Clammers rule applies, and the § 1983 claim fails.[13] "A plaintiff may, however, pursue a remedy under Section 1983 as well as under Title VII when the defendant's conduct violates both Title VII and a separate constitutional right."[14]

█ In this case, Plaintiff alleges that her "civil rights were violated due to her race and/or color."[15] As such, Plaintiff has a separate basis upon which her § 1983 claim rests: violation of the Fourteenth Amendment right to equal protection. Plaintiff "is not attempting to vindicate her rights created by Title VII under § 1983; she is pursuing a Title VII claim to vindicate rights created by Title VII. Instead, [Plaintiff] is attempting to vindicate her constitutional right to equal protection in her § 1983 claim."[16]

Plaintiff also alleges that Defendants violated her civil rights by retaliating against her for complaining about and asking for an investigation into violations of school district policies.[17] "Consequently, it is possible to infer that the complaint contains an allegation that the defendants retaliated against [Plaintiff] based upon her exercise of her rights under the First Amendment."[18] Thus, the Sea Clammers rule does not bar a § 1983 action based on Plaintiff's allegations. Accordingly, Defendants' Motion to Dismiss this claim is denied.

## C. Defamation

█ The Amended Complaint does not specify exactly what statements Plaintiff alleges were defamatory; nor does it specify which defendants made defamatory statements. However, it appears that Plaintiff bases her defamation claim entirely on statements made by Defendants during the hearings relating to Plaintiff's altercation with SW. It is well-established under Pennsylvania law that such statements cannot support a cause of action for defamation. "All communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse."[19] Although these hearings were not "judicial proceedings," this absolute privilege has

---

**12.** *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (internal quotation omitted).

**13.** *Regan v. Township of Lower Merion,* 36 F.Supp.2d 245, 249 (E.D.Pa.1999) ("[P]laintiffs may not vindicate rights created under Title VII under Section 1983.").

**14.** *Id.*

**15.** Am. Compl. at 9.

**16.** *McLaughlin v. Rose Tree Media Sch. Dist.,* 1 F.Supp.2d 476, 480 (E.D.Pa.1998) (internal

citations omitted); *see also Garrett v. Kutztown Area Sch. Dist.,* No. Civ.A.98–0966, 1998 WL 513001, at *2 n. 2, 1998 U.S. Dist. LEXIS 12626, at *5 n. 2 (E.D.Pa. Aug. 11, 1998) (finding § 1983 claim was not subsumed by Title VII).

**17.** Am. Compl. at 9.

**18.** *Regan,* 36 F.Supp.2d at 250 (allowing § 1983 claim based on defendants' retaliation for plaintiff's complaining about sexual harassment).

**19.** *Binder v. Triangle Publ'ns, Inc.,* 442 Pa. 319, 275 A.2d 53, 56 (1971).

been applied to quasi-judicial proceedings as well.[20] In this case, the purpose of the hearings was to investigate Plaintiff's role in the altercation with SW. Thus, these hearings were clearly quasi-judicial in character, and the statements made by Defendants during the hearings are absolutely privileged. Accordingly, Plaintiff's defamation claim is dismissed.

## D. Malicious Prosecution

 Under Pennsylvania law, to succeed on her claim of malicious prosecution, Plaintiff must allege and prove that the proceedings terminated in her favor.[21] In the Amended Complaint, Plaintiff does not allege that the proceedings terminated in her favor and to the contrary even states that Defendants terminated Plaintiff's employment. Accordingly, Plaintiff's malicious prosecution claim is dismissed.

## E. False Imprisonment

 In Pennsylvania, "an actor is liable for false imprisonment if: (1) she acts intending to confine a person within boundaries fixed by the actor; (2) her act directly or indirectly results in such confinement of that person ... (3) the person confined is conscious of the confinement or is harmed by it"[22] and (4) the confinement is unlawful.[23] A confinement is unlawful if there was no probable cause.[24] Further, "the confinement within the boundaries fixed by the defendant must be complete; if there is a known, safe means of escape, involving only a slight inconvenience, there is no false imprisonment."[25]

 Here, Defendants argue that Plaintiff will be unable to establish that Defendants lacked probable cause to detain her. In support of this argument, Defendants contend that the investigation of the incident identified numerous eyewitnesses who stated that Plaintiff assaulted SW.[26] The Court, however, is bound to

---

20. *Hurst v. Jiffy Lube*, No. Civ.A.00–133, 2000 WL 1790112, at *5, 2000 U.S. Dist. LEXIS 17506, at *18 (E.D.Pa. Dec. 6, 2000) ("The privilege has generally been extended to statements made during quasi-judicial proceedings, such as EEOC proceedings, because such proceedings are initiated in the regular course of preparing for contemplated proceedings in the employment discrimination context."); *cf. Milliner v. Enck*, 709 A.2d 417, 419 n. 1 (Pa.Super.1998) ("The 'judicial proceeding' wherein absolute privilege attaches has not been precisely defined in our Commonwealth. However, it has been defined to include any hearing before a tribunal which performs a judicial function, including many administrative officers, boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or 'quasi-judicial' in character.").

21. 42 Pa. Cons.Stat. Ann. § 8351(a)(2); *Kelley v. Gen. Teamsters, Local Union 249*, 518 Pa. 517, 544 A.2d 940, 941 (1988) ("A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of

the plaintiff."); *Woodyatt v. Bank of Old York Road*, 408 Pa. 257, 182 A.2d 500, 501 (1962) ("In actions for malicious prosecution, the rule is established beyond argument that one of the prerequisites to such an action is that the criminal prosecution upon which it is based must be terminated favorably to the party seeking damages.").

22. *Caswell v. BJ's Wholesale Co.*, 5 F.Supp.2d 312, 319 (E.D.Pa.1998).

23. *Pahle v. Colebrookdale Township*, 227 F.Supp.2d 361, 374 (E.D.Pa.2002) ("The elements of false imprisonment in Pennsylvania are (1) the detention of another person, and (2) the unlawfulness of such detention.").

24. *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289, 293 (1994) ("An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.")

25. *Chicarelli v. Plymouth Garden Apts.*, 551 F.Supp. 532, 541 (E.D.Pa.1982).

26. Mot. to Dismiss at 8.

consider all of Plaintiff's pleaded allegations as true: "when considering a motion to dismiss based on a failure to state a claim argument, a court should not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."[27] Accordingly, the Court cannot grant Defendants' Motion on this ground.

■■■■ Nevertheless, the exclusivity provisions of the Pennsylvania Workers' Compensation Act, 77 Pa. Cons.Stat. Ann. § 1, *et seq* ("PWCA"), preempt Plaintiff's false imprisonment claim. The PWCA provides the exclusive remedy for all employees' work-related injures.[28] However, the PWCA does recognize a limited exception, known as the "personal animus" or "third party attack" exception.[29] It allows claims for "employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment."[30] The "critical inquiry in determining the applicability of the third-party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship."[31]

■■■ In her complaint, Plaintiff does not allege that Defendants' actions were personal in nature. Nor does she allege that any of the defendants and Plaintiff had a relationship outside of the workplace. Moreover, all of the conduct at issue occurred in the work context and was directly related to workplace issues. Accordingly, the "personal animus" exception

---

**27.** *Roskos v. Sugarloaf Township.,* 295 F.Supp.2d 480, 483 (M.D.Pa.2003).

**28.** The Pennsylvania Workers' Compensation Act provides that the "liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees ... in any action at law or otherwise on account of any injury or death as defined in [77 P.S.] section 301(c)(1) and (2) or occupational disease as defined in [77 P.S.] section 108." 77 P.S. § 481(a); *see also Winfree v. Tokai Fin. Servs., Inc.,* No. Civ.A.99–2970, 2000 WL 233240, at *8–9, 2000 U.S. Dist. LEXIS 2068, at *24–26 (E.D.Pa. Mar. 1, 2000) (dismissing false imprisonment claim against employer as preempted by the PWCA).

**29.** *See* 77 Pa. Cons.Stat. Ann. § 411(1) ("the term 'injury arising in the course of his employment' ... shall not include an injury caused by the act of a third person intended to injure the employee because of reasons personal to him, and not directed against him as an employee or because of his employment.").

**30.** *Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 160 (3d Cir.1999).

**31.** *Fugarino v. Univ. Servs.,* 123 F.Supp.2d 838, 844 (E.D.Pa.2000); *see also Fleming v. Kramont Employer Royce Realty, Inc.,* No. Civ.A.02–2703, 2002 WL 1964257, at *5, 2002 U.S. Dist. LEXIS 15806, at *15–16 (E.D. Pa. Aug. 16, 2002) (exception does not apply where alleged discrimination included deprivation of necessary information, exclusion from essential meetings, public criticism and differential treatment); *Iacono v. Toll Bros., Inc.,* No. Civ.A.01–4486, 2001 WL 1632138, at *2 (E.D.Pa. Dec. 19, 2001) (exception inapplicable "because all of the allegedly offensive conduct occurred at work and arose out of the employment relationship"); *Winfree,* 2000 WL 233240, at *9 (exception does not apply where allegations are "arguably directed at plaintiff as an employee" and "demonstrate that plaintiff was treated as he was on the basis of class characteristics, not personal animus."); *cf. Hammerstein v. Lindsay,* 440 Pa.Super. 350, 655 A.2d 597, 601 (1995) ("Where the animosity between the third party and the injured employee is developed because of work-related disputes, the animosity is developed because of the employment, and the injured employee's remedy is exclusively under the Workmen's Compensation Act.") (exception does not apply where plaintiff did not plead any pre-existing animosity or personal reasons for alleged conduct).

does not apply, and the PWCA preempts Plaintiff's false imprisonment claim.[32]

### F. Intentional and Negligent Infliction of Emotional Distress

 Defendants rely on *Ford v. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137, 139 (1988), to argue that the Court should dismiss Plaintiff's Intentional Infliction of Emotional Distress claim because the tort is not recognized in Pennsylvania. Defendants' reliance on *Ford* is misplaced, as more recent cases have recognized this tort under Pennsylvania law.[33] Nevertheless, as with her false imprisonment claim, the PWCA preempts Plaintiff's emotional distress claims. Accordingly, the Court grants Defendants' Motion to Dismiss these claims.[34]

### G. Negligent Hiring, Training and Retention of Unfit Supervisor

 Defendants School District and Commission, against whom Plaintiff asserts this claim, correctly argue that they are immune under the Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 *et seq.* ("PSTCA"). Under the PSTCA, school districts are immune from

liability "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[35] This immunity "is waived under § 8542 to the extent the agency would otherwise be liable for a narrow subset of negligent acts by its agents or employees."[36] Negligent hiring, training and retention of an unfit supervisor is not one of the negligent acts for which immunity is waived.[37] Accordingly, the Court grants Defendants' Motion to Dismiss this claim.[38]

An appropriate Order follows.

### ORDER

**AND NOW**, this 13th day of April, 2004, upon consideration of Defendants' Motion to Dismiss [Doc. # 9] and Plaintiff's Opposition thereto [Doc. # 10], and for the reasons set forth in the attached Memorandum Opinion, it is hereby **ORDERED** that Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**. It is further **ORDERED** that:

1. Count IV (Wrongful Discharge), Count VII (Interference with Contractual Relations), Count VIII (Breach of Im-

---

32. Plaintiff's false imprisonment claim is also barred as to Defendants School District and Commission under the Political Subdivision Tort Claims Act, 42 Pa. Cons.Stat. Ann. § 8541 *et seq.* ("PSTCA"). *See Winfree*, 2000 WL 233240, at *23 (holding that township was immune from false imprisonment claim); *infra*, Section IV.G.

33. *See, e.g., Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476, 482 (1997) ("To prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe."); *see also EEOC v. Rose Casual Dining, L.P.*, No. Civ. A.02–7485, at *9, 2004 WL 614806, 2004 U.S. Dist. LEXIS 4335, at *30 (E.D.Pa. Mar. 5, 2004) (same).

34. Defendants the School District and the Commission are also immune to this claim under the PSTCA. *See infra*, Section IV.G.

35. 42 Pa. Cons.Stat. Ann. § 8541.

36. *Winfree*, 2000 WL 233240, at *23 (internal citations omitted); *see also* 42 Pa. Cons.Stat. Ann. § 8542.

37. 42 Pa. Cons.Stat. Ann. § 8542.

38. In her Response, Plaintiff states that this claim is a part of her § 1983 claim. The Amended Complaint, however, lists this as a separate cause of action. Regardless, Plaintiff has not alleged that commission of this tort caused her to be deprived of a right secured by the Constitution or federal law. Therefore, this tort cannot serve as the predicate for a claim under § 1983. Accordingly, this claim is dismissed.

plied Covenant of Good Faith and Fair Dealing), and Count X (Breach of Contract) are **DISMISSED WITHOUT PREJUDICE**;

2. Count I (Title VII), Count II (Sarbanes–Oxley Act, 18 U.S.C.A. § 1514A), Count V (Defamation), Count VI (Malicious Prosecution), Count IX (Negligent Hiring, Training and Retention of Unfit Supervisor), Count XI (Intentional Infliction of Emotional Distress), Count XII (Negligent Infliction of Emotional Distress), and Count XIII (False Imprisonment) are **DISMISSED WITH PREJUDICE**;

3. Defendants' Motion is **DENIED** as to Count III (42 U.S.C.A. § 1983); and

4. Defendants shall file an answer to the Amended Complaint within twenty (20) days of the date of this Order.

It is so **ORDERED**.